## No. 91.

### DANIEL R. CARROLL *v.* DAVID WALLACE.

1. In matters of garnishment, the jurisdiction of this Court is not determined by the amount admitted in the answer of garnishee, but, by that which, under plaintiff's writ, is sought to be collected from him.

2. Where a garnishee answers interrogatories without reservation, he cannot complain that he was not apprised of the true amount claimed, or that the notice to him was otherwise deficient.

3. The garnishee, in his answers, must disclose all that is necessary to inform the plaintiff as to what he is entitled to, and to enable the Court to determine fully the question of right in or to the property disclosed, if any. Where such disclosure is made, the answers are sufficient.

4. The plaintiff, in an attachment, cannot proceed against the garnishee to have him condemned until there has been final judgment against the original debtor.

5. McGloin, judge, in assenting to the proposition last announced, follows the precedents, but presents reasons for doubting their correctness.

*Appeal from the Third District Court, Parish of Orleans.*
*Monroe, Judge.*

*F. R. King* for plaintiff and appellant.

*Hudson & Fearn* for garnishee.

ROGERS, J.—This is a suit commenced by attachment against defendant, a non-resident. G. W. Sentell was made garnishee by service of citation and interrogatories, and to interrogatory 1st: "Have you any property, money, rights, credits or effects in your possession or under your control belonging to the defendant, David Wallace?"

He answers "that he does not know that he has any property, money, rights, credits or effects in his possession or under his control belonging to the defendant, David Wallace, unless it should be so construed that said defendant, David Wallace, has an interest in the net proceeds of eleven bales of cotton, shipped to him by Paul Daniels, of the parish of Point Coupee, La., for account of Wallace & Co., which cotton was sold, and

the net proceeds thereof, to wit: four hundred and twenty-six $\frac{21}{100}$ dollars ($426.21) are held by him for account of Wallace & Co., or for account of Mrs. David Wallace, having been informed that she, Mrs. David Wallace, is the owner of the lands leased to the said Paul Daniels. Besides, he has a letter from Wallace & Co., in liquidation *per pro.* John Wallace, under date of October 17, 1879, after being notified of the shipment of the eleven bales of cotton, instructing him to sell the said cotton for account of the said Mrs. David Wallace, and at the same time calling his attention to the fact that the lands leased to the said Paul Daniels, and the lease are the property of said Mrs. David Wallace."

The other interrogatories and answers are of no moment in the consideration of the questions presented to us.

It is suggested by counsel for appellee, that this appeal should be dismissed *ex propria motu,* the answer of garnishee disclosing an amount of $426.21 at issue, and the record certifying the judgment of the Court *a qua* was rendered and final prior to August 1, 1880. The general proposition here asserted has been determined by us in Williams *v.* Huger, and repeatedly affirmed, but the application of the views therein expressed cannot be made to the present case. The petition of plaintiff asks for a judgment against defendant, Wallace, for $811.55 ; and while the record does not disclose that a copy of the petition was served on garnishee, he was served with the interrogatories and duly cited to answer—he did answer without any reservation of rights, and we cannot hold that he was not sufficiently apprised of the amount of plaintiff's demand, or was not satisfied with the information contained in the citation and interrogatories delivered ;—further, we are now considering a proceeding, under the provisions of our Code of Practice, whereby a judgment is sought declaring that Sentell, garnishee, has sufficient property and funds in his hands to satisfy the claim and writ of plaintiff in the sum of $811.55, the sum in controversy, and consequently within our jurisdiction, and we are urged to so

decree, because he, Sentell, has not answered clearly and directly whether or not he held funds belonging to Wallace.

We have held and will hold garnishees to a strict obedience to the laws, and will not hesitate to liberally apply the sanction of the law to those whose answers are manifestly evasive; but in this case we do not consider the answers evasive, but very clear and explicit. A test would be to assume an answer to this interrogatory first, categorically " no ;" while it might be true that garnishee did not owe David Wallace, it would be insufficient and possibly evasive, because, as the facts now present themselves, he would not have answered fully, in order that the plaintiff might have the information to which he was entitled from the nature of his question, and the Court enabled, if requested, to determine the question of right in or to the property ; and the same difficulty would result from the answer " yes "—because the garnishee would then have at once assumed to dispose of a right, real or imaginary, of Mrs. Wallace, and in a suit against him by her, he could not allege want of notice of her claim and interest.

This matter has been considered by us on a motion to dismiss appeal, and we then refused to sustain the motion, because the record disclosed that the parties to the suit had tried the rule against the garnishee on the merits, and the judgment was rendered after such trial. (McGloin's Rep., p. 9).

We are satisfied from the answers of the garnishee, that he was not guilty of duplicity.

From the conclusion now reached, it has not been considered necessary to discuss the facts established on the trial of the rule traversing the answers of the garnishee, and for the further reason that no judgment has been rendered against the defendant, Wallace.

" The garnishee is only responsible to the plaintiff in attachment, through the claim which he has enforced to judgment against the defendant in the cause." Caldwell v. Townsend, 5 Martin, La. N. S. 308.

Judgment affirmed.

McGLOIN, J., concurring in the judgment:

The nature of the rule and proceeding now before us upon the merits, is explained in the opinion of this Court, in this case, rendered on motion to dismiss. 1 McGloin, 9.

The answers of the garnishee, are fair, full and explicit, but the merits having been investigated, I consider it shown that the garnishee has property subject to the plaintiff's writ. Objection is, however, made to condemning the garnishee, at this stage of the proceeding, and Caldwell v. Townsend, 5 Martin, La. N. S. 308; Proseus v. Mason, 12 La. An. 16; Lynch v. Burk, 10 Rob. La. 138; Collins & Leake v. Friend, 21 La. An. 7; Lawrence & Co. v. Hermance, of Supreme Court, not yet reported, are relied upon.

In Rogers v. Goldtwaite, 1 McGloin, 127, this Court held, that it would endeavor to observe the jurisprudence of the State, as established by the Supreme Court.

In Forstall v. Hollingsworth, lately decided by this Court, we also declared, that we would leave radical changes in our jurisprudence, to be inaugurated by the highest tribunal of the State. Therefore, I concur in the ruling of my learned colleague in this case, but only upon the strength of the precedents referred to. I do not, however, consider them as expounding correctly the law upon these questions. They practically maintain that a garnishee has, until the time of rendition of judgment against the principal debtor, to file his answers to interrogatories, and that, until such judgment, nothing can be done to fix his liability. This is, in my judgment, judicial legislation of the worst type, for it does not simply supply legislative omissions, but it actually supplants the legislative will, with that of the judiciary. There is express law, regulating and determining these questions in the Code of Practice, especially articles 260, 261, 262, 263, 264. Article 261 requires the answers to be given " within the usual delay,". and Art. 251, declares this delay to be that given in ordinary suits." Art. 263, C. P. declares that the refusal or neglect of a garnishee to answer, shall be " considered as a confes-

sion, etc." Thus, the law explicitly fixes a certain result, which is absolutely to follow upon the default of a garnishee. Viewed either as a penalty, or as the conferrence of a right upon an attaching creditor, it is, nevertheless, determined by the law itself, and the courts are without discretion to disregard or waive it, or delay its imposition.

In Proseus v. Mason, 12 La. 16, the case is likened to those, where a certain act, which is to be done within a particular time, has been permitted to be performed, after the expiration of the delay, where in the meantime, no action of court or party has intervened to prevent it. 7 La. 345; 9 La. 48; 9 La. 58. The parallel does not exist, for the cases to which this principle applies, are those only, where the law does not impose any penalty, or define a result, which is absolutely, and of itself, to follow the default. Thus, where a defendant fails to answer, or a creditor fails to oppose an account, a judgment of default in one case, or of homologation in the other, do not, by virtue of the law, follow as matters of course. On the contrary, in the one case the plaintiff must *move* for his default (C. P. 311), and in the other, the Court must *grant* authorization to pay, after the delay, and this of course, only upon due and proper showing. In neither case, can the Court, even *ex officio*, and unsolicited, enter its orders. We held, in Somers v. Cabinet Maker's Union, No. 59, on the docket of this Court, in interpreting the words "taken for confessed," as used in C. P. 349, and applied to interrogatories on facts and articles, propounded to an original party to a suit, that the confession was the result of the law itself, entirely independent of any action by the Court. Such has been the ruling of the Supreme Court in this connection. Seaman, Beck & Co. v. Babbington, 11 La. An. 173; Magee v. Dunbar, 10 La. 551; Cox v. Mitchell, 7 La. 522; Polo & Tivilier v. Natili, 14 La. 260.

In my judgment, this is the principle properly applicable to the question now before us.

The spirit and letter of the Code contemplate the speedy determination of the controversy between the plaintiff and the

garnishee, independent of, and I may say before the conclu-
sion of the suit between plaintiff and defendant. The remedy
of garnishment was originally accorded in cases of attachments
alone, and was extended to writs of *fieri facias* by the amend-
ment to the Code. Therefore, the articles which formed
part of the original legislation, had in view suits by attach-
ment, where the writ issues before judgment, and usually
gives way to other rights and writs, after the same. C.
P. Art. 247 accords the creditor the right to compel the
garnishee, admitting the possession of funds to give bond, or
deposit the money in Court. Although the word *bail* is used
in this article, it evidently means " bond," or security, such as
it is permitted to a defendant to give by article 259, C. P.
This is evidently to secure the money, pending the litigation
against the defendant proper. So C. P. Art. 264, referring to
the trial of traverses speaks of the trial and judgment, in
connection with the attachment levied against the property
in his hands. The decree is expressly required to be *contin-*
*gent upon the future judgment against the defendant, and to meet*
*the same.* Article 263 would, at first sight, seem to justify the
immediate and unconditional judgment against a garnishee,
who fails to answer within the legal delay. It, however, does
not so expressly say, and we might well consider, that the
judgment, which it does not expressly describe, as to its char-
acter, or time of rendition was intended to be in these respects,
similar to that described in the succeeding article.

At all events, article 263 is far from militating against the
position assumed that the law does not make the one judg-
ment depend as to date of rendition upon the other. Nor do
I consider it a hardship upon a garnishee, to be required to
answer before the defendant is compelled so to do, or before
defendant is condemned, as seems to have been discovered in
Proseus *v.* Mason, 12 La. 16. On the contrary, it too often
happens, that the writ of attachment is expected to reach no
property but what may be in the hands of a garnishee, and if
he holds none, there is no reason for pursuing the suit. Fre-
21

quently, the very question of jurisdiction itself depends upon this issue. The real hardship, and the one which, in my judgment, the law intended to avoid, lies in compelling an attaching creditor, to remain, without advantage to any one, in utter ignorance as to his standing and rights, while he incurs heavy costs, in prosecuting a suit, only, perchance, to find in the end, that the court entertaining the same is without jurisdiction, or that the litigation has been fruitless, by reason of the failure of his writ to reach the property.

The court in Proseus v. Mason, recognizes this difficulty, but does not meet it in a manner satisfactory to me.

It does not follow from all this, that the plaintiff, or the sheriff, where garnishment has been resorted to, can touch or disturb the money of a defendant, reached by the process before judgment against the latter. C. P. Art. 247, gives the garnishee, confessing, the right to bond the money reached, or deposit it in court, while C. P. Art. 257, in directing the sheriff to take and keep the property attached, especially, excepts sums due the defendant by the garnishee, and C. P. Art. 264, provides for, in cases of traverse, only a contingent judgment, subjecting the money or property affected, to the decree when obtained against the defendant.